UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS EDWARD DEMOGOLA,

          Plaintiff,

v.                                                                    Case No. 1:10-cv-1169
                                                                       Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on December 13, 1969 (AR 348).[1]  Plaintiff alleged a disability onset date of August 12, 2004 (AR 11).[2]  He completed the 12th grade but did not graduate from high school (AR 349).  He had previous employment as a general laborer, mechanic, tire installer, tow truck driver, sales person and factory worker (AR 66-67, 80-86).  Plaintiff  identified his disabling conditions as a back problem, with associated leg problems and numbness in his heel (AR 354-56).  While plaintiff also suffers from asthma and diabetes, these conditions are under control (AR 354, 356-57).   Plaintiff did not retain a representative to assist him in pursuing his disability

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] Defendant points out that plaintiff's application for DIB does not appear in the record.  However, he does not dispute the ALJ's finding that plaintiff alleged a disability onset date of August 12, 2004 and that he applied for DIB on September 19, 2005.

claim at the agency level. The ALJ reviewed *pro se* plaintiff's claim *de novo* and entered a written decision denying benefits on August 28, 2008 (AR 9-15). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

2

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861

F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  The ALJ initially found that

plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 12,

2004 through the last insured date of December 30, 2008 (AR 11).  Second, the ALJ found that

plaintiff had severe impairments of low back pain / degenerative disc disease (DDD) and morbid

obesity (70" tall weighing 316 pounds) (AR 12).  At the third step, the ALJ found that plaintiff did

not have an impairment or combination of impairments that met or equaled the requirements of the

Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 12).  In this regard, the ALJ

reviewed Listing 1.04 (Disorders of the spine) (AR 12).  The ALJ decided at the fourth step that

plaintiff had:

> the residual functional capacity to perform light work as defined in 20 CFR
> 404.1567(b) except occasional stairs / ramps, no ladders / ropes/ scaffolds,
> occasional stooping / kneeling / crouching / crawling; avoid concentrated exposure
> to extreme cold, heat, humidity, vibration, fumes, odors, dusts, etc., and hazards
> [machinery, heights, etc.]. . .

(AR 12).  In reaching the residual functional capacity (RFC) determination, the ALJ found that

plaintiff was not credible (AR 13-14).  Nevertheless, the ALJ also found that plaintiff was unable to

perform his past relevant work, which the ALJ found to be "too strenuous" (AR 14).

At the fifth step, the ALJ determined that plaintiff was not disabled under the medical

vocational guidelines (or grids), stating as follows:

> If the claimant had the residual functional capacity to perform the full range
> of light work, considering the claimant's age, education, and work experience, a
> finding of "not disabled" would be directed by Medical Vocational Rule 202.17.
> However, the additional limitations have little or no effect on the occupational base

4

of unskilled work.  A finding of "not disabled" is therefore appropriate under the framework of this rule [SSR 96-9p / 85-15].

(AR 15).  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from August 12, 2004 through August 28, 2008 (the date of the decision) (docket no. 15).

### III. ANALYSIS

Plaintiff has raised three issues in his appeal.[3]

A.    **"Whether the ALJ rendered his decision on August 28, 2008, contrary to the great weight of the evidence presented when reliance was placed primarily on a consultative examination lasting 10-15 minutes providing insufficient range of motion physical testing on the patient."**

Plaintiff contends that the ALJ improperly relied on a consultative examination performed by an unidentified physician.  Plaintiff is apparently referring to the examination performed by DDS physician, Donald Sheill, M.D. on June 10, 2008 (AR 88-99).  At that time, Dr. Sheill found: that plaintiff had a long history of lumbar pain; that deconditioning and obesity appear to be substantial and frustrating issues that plaintiff has not overcome; that plaintiff has diabetes; and that plaintiff has painful feet possibly due to plantar fasciitis and early diabetic polyneuropathy (AR 89).  Plaintiff had a normal gait, "very few" pain behaviors, and a straight spine without deformity (AR 89).  Plaintiff's range of motion was normal (AR 90-93).  Dr. Sheill limited plaintiff to:

---

[3] Plaintiff's counsel has submitted a brief which consists of 3 1/2 pages of conclusory arguments without citation to case law or regulations.  By failing to adequately address plaintiff's claims, counsel has effectively waived this appeal.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").  Nevertheless, in fairness to plaintiff, the court will review the three general errors identified by counsel.

occasionally lifting up to 50 pounds; continuously lifting up to 20 pounds; occasionally carrying up to 50 pounds; frequently carrying up to 20 pounds; and continuously lifting up to 10 pounds (AR 94).

The ALJ found that plaintiff did not meet the requirements of Listing 1.04 (disorders of the spine), even when considering plaintiff's obesity (AR 12). In this regard, the ALJ relied on Dr. Sheill's determinations: that plaintiff had a normal gait; that plaintiff's spine was straight without deformity; that plaintiff's straight leg raising was free of pain, behaviors or symptoms; and that plaintiff had unremarkable knees (AR 12). Dr. Sheill also opined that plaintiff "could lift continuously up to 20 pounds, carry up to 10 pounds, sit 8-hours in a work day, stand 4 hours, walk 4 hours, did not need a cane, could continuously use both of his hands and feet, and should avoid concentrated exposure to extreme cold, heat, humidity, vibration, fumes, odors, dust, etc., and hazards" (AR 12). Plaintiff does not identify anything in the record to demonstrate that Dr. Sheill performed an inadequate examination. On the contrary, Dr. Sheill had some familiarity with plaintiff and a longitudinal perspective on his condition, having examined plaintiff in both January 2006 (AR 150-53) and June 2008 (AR 88-99). Accordingly, this claim of error will be denied.

> **B.** **"The ALJ's finding that the Claimant was able to perform a wide range of work in the general economy given his age, education, and work experience without the assistance and testimony of a vocational expert is not sufficient to render a decision of *Not Disabled*."**

Plaintiff contends that the ALJ erred by using the grids rather than a vocational expert (VE) to determine that plaintiff was disabled at step five of the sequential evaluation. The grids "take account only of a claimant's 'exertional' impairment, that is 'an impairment which manifests itself by limitations in meeting the strength requirements of jobs[.]'" 20 C.F.R., Part 404, Subpt. P,

6

App. 2 § 200.00(e)." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).  An ALJ may use the grids, rather than expert testimony, to show that a significant number of jobs exist in the economy when the claimant's characteristics fit the criteria of the guidelines.  *Siterlet v. Secretary of Health and Human Servs.*, 823 F.2d 918, 922 (6th Cir. 1987).  *See Bohr v. Bowen*, 849 F.2d 219, 221 (6th Cir. 1988) ("the grids are a shortcut that eliminate the need for calling in vocational experts").

The grids only apply to a claimant when all factors (i.e., age, work experience, physical ability and education) meet the requirements as set forth in the grids.  "In general, where the characteristics of the claimant exactly match the characteristics in one of the rules, the grid determines whether significant numbers of other jobs exist for the person or whether that person is disabled." *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003).  As the Sixth Circuit explained:

> The grid comes into play only when the claimant's characteristics precisely coincide with the grid. In any other situation the grid is used at most for guidance in the disability determination. When the claimant does indeed match one of the grid's patterns, then all the grid does is announce that substantial gainful work in the national economy is available for that particular individual; in other words, once a finding is made that the individual can do light work, for example, the grid operates to declare that light work is available.

*Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981).

Here, the ALJ applied Rule 202.17, which provides that a younger individual (age 18-49), with limited or less education ("at least literate and able to communicate in English"), with either no work experience or previous work experience, and the ability to perform work  at the light exertional level, is deemed "not disabled."  Rule 202.17,  20 C.F.R., Part 404, Subpt. P, App. 2.  The court agrees with plaintiff that the ALJ should not have relied on the grids to establish that plaintiff was not disabled at step five.  The ALJ found that plaintiff suffered from numerous nonexertional limitations which would generally preclude the use of the grids (i.e., " occasional stairs / ramps, no

7

ladders / ropes/ scaffolds, occasional stooping / kneeling / crouching / crawling; avoid concentrated exposure to extreme cold, heat, humidity, vibration, fumes, odors, dusts, etc., and hazards [machinery, heights, etc.]") (AR 12).[4]  In *Jordan v. Commissioner of Social Security*, 548 F.3d 417 (6th Cir. 2008), the Sixth Circuit addressed the limitations of applying the grids when a claimant has nonexertional limitations or impairments like plaintiff:

> We have held that the SSA may not rely on the grids alone to meet its step-five burden where the evidence shows that a claimant has nonexertional impairments that preclude the performance of a full range of work at a given level. *Abbott v. Sullivan*, 905 F.2d at 926-27; *Damron v. Sec'y of Health and Human Servs.*, 778 F.2d 279, 282 (6th Cir.1985).  Normally, where a claimant suffers from an impairment limiting only her strength (i.e., exertional limitations), the SSA can satisfy its burden through reference to the grids without considering direct evidence of the availability of jobs that the particular claimant can perform.  We cautioned in *Abbott*, however, that where a claimant suffers from nonexertional limitations that significantly restrict the range of available work, "rote application of the grid is inappropriate."  *Abbott*, 905 F.2d at 926.  Noting that the grids take account of only exertional limitations (as contrasted with SSR 85-15, which accounts for only non exertional limitations), we held that an ALJ cannot rely on the grids alone in cases where the claimant's nonexertional limitation "significantly restrict[s] the range of available work."  *Id.* at 926-27.  In *Damron*, 778 F.2d at 281-82, we found that the ALJ, who had relied solely on the grids, "completely failed to consider the effect of nonexertional limitations upon [the claimant's] ability to find work in the national economy."

> *Abbott* and *Damron* reflect the general rule in this circuit that, where a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform.  *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir.1990).  "Reliance upon the grids in the presence of nonexertional limitations requires reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work

---

[4] Nonexertional impairments include mental, manipulative and environmental limitations.  *See Carreon v. Massanari*, 51 Fed. Appx. 571, 575-76 (6th Cir. 2002); *Abbott*, 905 F.2d at 926.  Examples of nonexertional impairments or limitations include "difficulty  performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching" and "difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes."  20 C.F.R.  § 404.1569a(b), (c)(v), (c)(vi).

permitted by [her] exertional limitations." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987).

*Jordan*, 548 F.3d at 424.

In this case, the ALJ applied the grids after finding that plaintiff's nonexertional impairments "have little or no effect on the occupational base of unskilled light work" (AR 15). The ALJ, however, does not set forth "reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by [his] exertional limitations." *Jordan*, 548 F.3d a 424 (internal quotation marks omitted). Furthermore, given the numerous nonexertional limitations in plaintiff's RFC, it is conceivable that these limitations, separately or in combination, could significantly limit the type of work available to plaintiff at the light exertional level. Based on this record, the ALJ's decision to use the grids is not supported by substantial evidence in the record, and this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of the vocational evidence. On remand, the ALJ should either set forth "reliable evidence" that plaintiff's nonexertional impairments do not significantly limit his ability to perform the exertional requirements of light work, or secure testimony from a VE to establish that plaintiff can perform other work which exists in the national economy.

C.    **"The ALJ was in error in deciding the claimants testimony (see finding #6 pg 13 ALJ decision), was not credible."**

Here, plaintiff raises two general claims of error. First, that plaintiff is entitled to disability benefits because he represented himself at the administrative hearing. Second, that the ALJ did not identify an instance where plaintiff was not credible or "straight forward" with information.

9

### 1.    Plaintiff's self-representation

Plaintiff contends that he is entitled to relief in this court because he was at a disadvantage appearing at the administrative hearing without representation.  Plaintiff's contention is without merit. The record reflects that plaintiff declined the ALJ's offer to appoint him a representative at the administrative hearing and he chose to represent himself (AR 345-48). Plaintiff is not entitled to a remand simply because he refused the ALJ's offer to appoint counsel. It is well established that a Social Security claimant may waive his right to counsel.  *See Nabours v. Commissioner of Social Security*, 50 Fed. Appx. 272, 275 (6th Cir. 2002) ("it is clear that a claimant may waive his right to counsel"). Accordingly, plaintiff's claim of error will be denied.[5]

### 2.    ALJ's credibility determination

The ALJ found that plaintiff was not credible to the extent that his claims are inconsistent with the RFC assessment (AR 13).  Plaintiff contends that the ALJ erred in evaluating his credibility.

An ALJ may discount a claimant's credibility where the ALJ  "finds contradictions among the medical records, claimant's testimony, and other evidence."  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997).  "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony."  *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972).  The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The threshold for overturning an ALJ's

---

[5] The court notes that the ALJ has a "special duty" to develop the administrative record and ensure a fair hearing for claimants that are unrepresented by counsel. *See Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986).  However, plaintiff does not claim that the ALJ failed to meet his "special duty" in this case.

credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed in unpublished opinions that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, No. 08-4706, 2010 WL 4810212 at *3 (6th Cir. Nov. 18, 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact" *Sullenger v. Commissioner of Social Security*, No. 07-5161, 2007 WL 4201273 at *7 (6th Cir. Nov. 28, 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Given plaintiff's objection to the ALJ's entire credibility determination, the court will set forth the ALJ's determination in its entirety:

Dr. Sheill noted claimant had "very few pain behaviors," with little in the way of significant objective findings; which contradicts claimant's testimony of level "7"/10 pain.

Dr. Sheill gave a light RFC and no treating physician has opined otherwise [SSR 96-2p]. Dr. Sheill had previously examined the claimant [1/3/06] (Exhibit F/136).

There is also an issue of non-compliance with therapy over the years; e.g., claimant told Dr. Berndt that he "forgotten most of what the diabetes educator told him regarding diet modification . . . (Exhibit F/49). Dr. Sheill noted claimant's therapy "fell by the wayside" and that he stopped going to aqua-therapy ostensibly because he ran out of visits; Type 2 diabetes not controlled, not compliant with diet, drinks full sugar pop, does not exercise much (Exhibit F/181).

Dr. Sheill based his medical opinion on the CE exam and three MRIs since 2004 [see Exhibit F/94, 154, 162], which he noted revealed various degenerative findings, but no root impingement, only mild stenosis, and no dominant lesion, or surgical issue. [see also Exhibit F/174 -- "moderate back pain, abnormal EMG]. Dr. Sheill noted claimant had no surgery but over the years has received various forms of therapy; e.g., dynamic lumbar stabilization [see F/89, 109], which , as noted above, "fell by the wayside." Recently, plaintiff received aqua-therapy and reported feeling more energetic and better overall, but stopped, as noted above, because he ran out of therapy visits. He reported he had been dieting and lost weight. Claimant at

11

5'10" weighed 308 pounds at the hearing [7/29/04 he was at 316# - F/75; 324# when he saw Dr. Sheill 1/3/06 (F/135)]. He complained about his feet, but his gait was normal. There was some tenderness on the plantar aspect of the heels, left greater than right, with no ankle ligamentous laxity, and knees were unremarkable. Claimant's *diabetes* seemed generally under *good control*, with blood sugars never over 200, glycohemoglobin quite favorable at 6-7, with ophthalmologist recently finding no end-organ damage, with claimant not having fixed numbness in toes, or feet, he did not think claimant had polyneuropathy. However, Dr. Sheill noted early diabetic polyneuropathy considering claimant's dysesthesias, with left foot in particular numb rather frequently, with the right sometimes numb, over six months. Asthma flared up in certain weather and dust, but he did not seek ER. He did some housework and light activity, including raking, and walked around the store (but not very long). Generally, he presented as being de-conditioned and inactive. Medications were Levothyroxine, Lisinopril, Lipitor, Adipex, Naproxen, Vicodin 90 per month, Benadryl, Avandia, Lexapro, and Albuterol, without any noted side-effects, unlike at hearing, when claimant testified Vicodin took the edge off but even Morphine did not take pain away and put him in a daze. Interestingly, earlier claimant told his doctor [Berndt], who prescribed the Morphine that his chronic pain was well managed on Morphine and there were no *side-effects* (Exhibit F/55).

Claimant had some complaints of ankle and knee pain but with minimal findings (see Exhibit F/172).

After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained above.

(AR 13-14) (emphasis in original).

There is no compelling reason to disturb the ALJ's credibility determination in this case. The ALJ has found contradictions among the medical records, plaintiff's testimony, and other evidence. *See Walters*, 127 F.3d at 531. For example, the ALJ noted: that plaintiff exhibited "very few pain behaviors" when examined by Dr. Sheill, a finding which is contrary to plaintiff's testimony that on a scale of 1 to 10, he experienced pain at a level 7 throughout the administrative hearing (AR 13, 357); that plaintiff had a history of non-compliance in treating his diabetes (e.g.,

plaintiff is not compliant with his diet, drinks full sugar pop and does not exercise much) (AR 13); that plaintiff's gait was normal (AR 13); that the Morphine did not take the pain away and put him in daze (AR 14, 360-61); and that there were minimal objective findings to support plaintiff's complaints of disabling ankle and knee pain (AR 14, 116, 354-56). The ALJ's credibility determination is reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249. Accordingly, plaintiff's claim of error regarding the ALJ's credibility determination will be denied.

## IV. CONCLUSION

The ALJ's determination at step five of the sequential evaluation is not supported by substantial evidence. Accordingly, the Commissioner's decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings. On remand, the ALJ should either set forth reliable evidence that plaintiff's nonexertional impairments do not significantly limit his ability to perform the exertional requirements of light work, or secure testimony from a VE to establish that plaintiff can perform other work which exists in the national economy. A judgment order consistent with this opinion shall be issued forthwith.

Dated: March 30, 2012                           /s/ Hugh W. Brenneman, Jr.
                                                HUGH W. BRENNEMAN, JR.
                                                United States Magistrate Judge

13